Good morning. May it please the Court, Counsel, Michael Kennedy, Counsel for Damon Davis, I'd like to reserve two minutes for rebuttal. The relief that I seek is a reversal of the conviction, a remand to the district court, and reassignment to a district – a different district court judge. You want a reversal of the conviction? Of the judgment, I'm sorry. The judgment of conviction. I misspoke in terms of the supervisor relief. Because it was a violation of supervisor relief. Yes, yes. That judgment of conviction. Thank you, Your Honor. The assault with a dangerous weapon still stands. Well, actually, it was a felon in possession, but yes, it does. Damon Davis was at the New Frontier. He walked to the door. As he turned around, he was ambushed by a punch directly into this area of the face where he got stitches. It was a sucker punch. He was ambushed. The other individual continued to punch him. Damon Davis reacted. He punched back. He punched back until other individuals entered the room and broke the two of them up. He testified that if he'd known this was going to happen, he would have walked out the door. He said he wanted to continue in a different program under oath. The error that occurred here by the district court judge is he applied the wrong law of this circuit for self-defense. Counsel, it seems that you pretty well put all of your eggs in one basket, and that is, assuming that Mr. Davis was violated for committing a new crime under California law, assault or battery, and that the trial judge, the district court, misapplied the rule of self-defense. That seems to be your theory. When, in point of fact, Mr. Davis was violated because the probation officer represented in an admittedly not under oath, but in a summary, she said, Mr. Davis is required by the judgment to complete a program of drug and alcohol training or treatment or counseling. I sent him to this one. He was thrown out. The people there told me that they weren't going to let him back in. They wouldn't give him a recommendation and couldn't help me find another program for him to go into, and on my own, I can't find another program for him. Nobody will take him. Therefore, I want to revoke him. That was the issue. And so when you made your argument about self-defense, the trial judge, the district court, seemed to say, I don't care who started the fight. I don't care if he was attacked or didn't. I'm looking at this and I'm finding out he's thrown out of the program. We can't get him into another program. He loses. The response would be, Your Honor, this Court, last year in 2011 in the Winston case, and I quote, while the government says the violation was the failure to complete the program, that violation was not voluntary, but was a result of the decision of the program. Winston's wrongful act was the alleged threat to the RRC worker. To be a violation, there's a mens rea requirement under vega. This Court's decision. And so the act that was alleged was the aggression. The reason he was terminated from the program was a finding of mutual combat or mutual altercation. And the evidence showed the exact opposite, self-defense. But you seem to want to analyze this in terms of if he were charged with assault. No, Your Honor. He's not. And so I don't think you can analyze this in terms of self-defense. Because there's a lot of things in programs, for example, a lot of the programs won't let people have a relationship with the other people in the program. And you get kicked out for that. Well, then, you know, someone could say, Well, I have a right to have a relationship with anyone that I want to have a relationship with. Or I have a right to be in a fight if I want to be in a fight. But when you're in this person's position, you don't, you know, it's not the same as we're charging him with a crime. The reason that he was violated was the finding of a fight as opposed to self-defense. Well, a finding that Davis participated in a mutual altercation. Which is different than self-defense. A mutual altercation under Nevada law, under the Ross case in California, is an agreement to fight where self-defense goes away. It's not responding to a punch to your face. And so the condition here, what the government... But the district court found it was a mutual altercation. So we have to, do we review that for clear error then? We have a factual finding. Do you dispute that? You review it for, on two bases. One, he applied the wrong law to make that finding under self-defense. The district court found that after the first punch, Davis had an obligation to turn around and run. The one punch and run rule, which is completely not the law of the circuit. Second, he said that with respect to the self-defense claim, that the government argues that there has to be some, he has to show an alternative, confusing the justification defense with self-defense. I don't have it. I didn't bring your brief with me. You said that you're asking for another judge on this as well? Yes. Did you? Was that in your brief? Yes. Well, that's only supposed to be under extraordinary circumstances. And what's extraordinary about this? As soon as Mr. Davis got done testifying, the judge then began to tell him that he was a danger. He began to sentence him. He took his finger and swore at him. He went through the entire thing. As he told him to stand up and stand next to me, after he had read the conditions, I interposed an objection. He told me to make it after the judgment was rendered. I said, Your Honor, you haven't allowed him allocution. You haven't allowed me to speak. And you haven't allowed the government to speak. He then imposed, after allowing that, the same sentence, 14 months to 18 months. That conduct, and then on the record after we were done, said that that was intentional on his part. That it wasn't against me, but it was against my client. And under the Roebuck standard, under the Ellis standard, either if you set aside prejudice or bias, the appearance of justice would require reassignment on remand on that record. Admittedly, that might have been done differently. But as it was done, at one point, I believe it was you, you said something to the effect of, well, Judge, why don't you give him 12 months and then cut him loose from supervised release, apparently conceding that by his conduct he'd shown he's not going to succeed on supervised release, so we should simply cut him loose. Well, Your Honor, I listened to the court and he'd already found a violation. At that point, I had already argued and said there was no violation. When the judge rules and says there's a violation, then he's asking for a sentencing argument. And so I gave him that sentencing argument as an alternative to the 14 months, followed by 18 months of supervised release that he'd already told him before I was able to speak. So in response to that, I said, if you're going to revoke him, even though you're dead wrong on the law of self-defense, then why don't you do this? And the government actually agreed with me in their sentencing argument, in terms of no supervised release to follow. So how long has your client been in custody now? He has just completed his term. He's at a halfway house right now. So he's on supervised, the 18-month supervised release at this point? Yes. And I believe that just happened this week, Your Honor. Okay. It looks like my two minutes is close, so I will sit down. Okay. Thank you. Good morning. Good morning. Good morning. May it please the Court. Good morning, Counsel. Elizabeth Olsen-White for the United States. The district court conducted a hearing. He took evidence. The defendant testified, and the district court was able to assess his demeanor, his tone of voice, ultimately his credibility. And at the end of the day, the district court rejected the defendant's  The district court found that the defendant's claim that none of this was true, and it was at least partly responsible for the fight that got him kicked out of the drug treatment program. Well, is that a clear error review? Yes. Yes. Do you agree with counsel that the rightness or wrongness of the decision to revoke based on the failure to complete the program rises or falls on a finding that Mr. Davis was responsible for the fight? No. No. I think that there were a number of things going on, and the district court did touch upon them. I mean, not only was there this fight, but what the program said after they terminated him from the program is that they weren't able to refer him to another program because of his behavior throughout the day. You know, he showed up. The report indicated that he showed up with a bad attitude. He thought he was going to have a week before he had to report. He didn't like the food. He didn't like the room. He had an entitled demeanor and attitude, and he didn't want to be there. Is all that in some report? Yes. I think it's page 90 of the excerpt of record is the probation officer's report summarizing the report from New Frontiers. But going back, I mean, to the issue about the fight itself, I think that the defendant's argument sort of rests on this assumption that if someone hits you and then you hit them back, your hitting them back is by definition an act of self-defense as opposed to an act of anger or machismo or payback. And the district court rejected that, and he made a very nuanced decision. He said, that first swing, fine. I mean, he took the defendant at his word that the defendant walked, closed the door, turned around, and the other guy punched him. Right? He took him at his word. And he says, fine. When that happens, you put up your dukes. You swing back. That's a defensive move. But after that, and remember, the defendant told the police officer there was a police report. The defendant told the police officer that he knocked Bobby, was the roommate, he knocked Bobby to the ground. Okay? Well, once Bobby is knocked to the ground, how is it self-defense to keep fighting? Right? I mean, the judge kind of, he made this distinction. He said, fine, the first move was a defensive move, but then you kept at it. You kept going. You could have walked out of the room. Now, the defendant cites this court's decision in Biggs for the assertion that you don't have to, that there is no obligation to withdraw. And respectfully, that's not what Biggs says. I mean, what this court did in Biggs, it did two things. First of all, it rejected the Seventh Circuit's rule of self-defense. The Seventh Circuit rule is that in order to make the showing to be entitled to raise the affirmative defense of self-defense, a defendant has to show that there were no other alternatives. And the Ninth Circuit says, we're not going to say that. That is not something that the defendant has to show to be entitled to raise a claim of self-defense. But you do have to show two things. You have to show that you reasonably believed that. But is the analysis in terms of an assault charge in Biggs? Yes. Yes. And that's the other thing. I mean, I think I'm trying to respond to the argument he made because that's the argument he's making. But at the end of the day, the defendant was terminated from this program because he was a program failure. Part of that was his fight. Part of that was his attitude. At the end of the day, the district court found that he failed to That was a condition of supervised release. That the defendant was responsible for that. And that constituted a violation. And then the court exercised his discretion to revoke his supervision as a result of that. When a petition to revoke supervised release survives the initial hearing before the magistrate judge to determine probable cause, and the supervisee refuses to admit the allegations that his or her supervised release should be revoked, the court must hold an adjudication hearing. Yes. At the adjudication hearing, don't you agree that the burden is not on the defendant to explain what went on, but rather on the government to prove, by preponderance of the evidence, a basis for revoking supervised release? Yes. Now, in her unsworn summary, the probation officer set out what you're talking about, namely that she couldn't find an alternate program. But wasn't it the burden on you to either have her present to testify to that at the hearing or alternatively explain her absence, justify not calling her by, for example, she's quit the job or she's gone away or she's not available? No, she's still there. Okay. Because, you know, when I looked at the record in this case, I was kind of befuddled because the only person the government produced as a potential witness was a fellow who on cross-examination said, oh, well, I'm twice removed from this. I don't really know anything about this case at all except what I read in the record. Yes. And that's true. The person who testified, the government's witness, was a probation officer, not Mr. Davis's probation officer. Well, he was a supervisor of a supervisor who supervised the ---- Yes. And he testified, he basically, the government's evidence was the police report and the probation officer's report. He testified. That is correct. The government didn't explain why they weren't there. Yes. And I don't know the answer to that either. Were there objections? There was a hearsay objection, although at the beginning of the hearing, there was some discussion about whether or not there was going to be a hearsay problem here. And defense counsel conceded that hearsay is admissible in probation revocation hearings, although when the first question was asked about what was in the report, there was a hearsay objection which was overruled. Well, this Court, the case I'm thinking of was Judge Reinhardt's, but there are other cases, points out that where hearsay is admissible, is admitted at a revocation proceeding, it may be permitted if the court exercises balancing. In other words, determines that, in the examples given, that really the hearsay is beyond dispute. Where the hearsay goes to the precise issue to be determined, live witnesses subject to cross-examination must be called. And here, the real issue in this case is, did Davis's admittedly abysmal conduct at the proceeding, at the program, justify a finding not only that he was properly thrown out, but that he couldn't be put in anywhere else so that the court could infer that not only had he failed here, because as I understand it, the judgment didn't specify this program as the one he had to complete, even though he failed here, it's also, we're also able to infer that he wouldn't succeed anywhere else. And all that's hearsay. Yeah. Just two things, actually three. First of all, just to be clear on the record, the Winston case, which I think is the Judge Reinhardt's decision that you're talking about, that defense counsel cited in his argument, is an unpublished case that has no precedential evidence. But actually, I was thinking about two others, both of which were published, and talk about balancing. Okay. I think that in this case, well, I guess my second point is this isn't an issue that was raised on appeal. So to that extent, I think that issue has been abandoned on appeal to the extent that it was an issue.  If the defendant had made that objection, had asked for a continuance, had said that they wanted to specifically challenge, you know, those statements by the probation officer, we'd be in a different situation here. I think they did. Was that their burden? I'm sorry? Was that their burden? To object? To demand a continuance. Well, I think if they had. Why couldn't Mr. Davis come in and say, look, the burden of proof is on the government. To prove that my supervised release should be revoked based upon the reasons outlined in the summary that the probation officer attached to the initial petition. The burden's on them, not on me. And just sit down and said nothing. In fact, Davis would have probably been much better off if he'd sat down and said nothing. But why does he have to ask for a continuance? Why isn't the government on notice? No, I'm not. I'm sorry. I didn't. I misspoke if I said he had the burden to ask for a continuance. I think that the report that was introduced through another witness was hearsay. The district court accepted that and determined that that report met the government's probable cause. Now, if what you're saying is that a hearsay report should not be held to meet that burden, that's just, I mean, that's, I guess, just a disagreement with what the district court decided. And you're saying that wasn't raised on appeal? And that's not raised on appeal. Well, let me ask you. Appellant's counsel says that if this were to be remanded, that it should be another judge. Do you want to respond to that? I addressed that in our answering brief just in a footnote. I mean, I think that I obviously wasn't at the hearing, but my understanding was that it was a fairly heated hearing and the judge expressed some real anger at the defendant and that after the defendant left the room, and it's at the very tail end of the transcript, the judge said, now that the defendant is gone, let me just explain to you all, Mr. Kennedy and Ms. Vahami from my office, who was the attorney. I did. Yes, I did raise my voice. And I did that intentionally. And I was trying to make, I was trying to get through this defendant's head that he needs to straighten up. And so I think that the judge did express some anger, but he explained that he did that intentionally in sort of a, you know, attempts at straight talking. Exactly. So I don't, I mean, I just don't see anything in the record that would require it. All right. Unless there's other questions, we've taken you over your time. And you do have some rebuttal. Thank you. First of all, it is the government's burden of proof under the revocation statute 3583. Second, the case that I believe the court was referring to is United States v. Comita, C-O-M-I-T-O, which is at 177 Fed 3rd, 1166. The jump site is 1172. But you're not really raising that here. I did through the Winston case because it quotes that case. And I raised the fact that the government hadn't met their burden of proof because it's the government's burden of proof. Once self-defense under the Ninth Circuit instruction is, there's a prima facie case, it becomes the government's burden to prove that it's not self-defense at a hearing. Just like at a trial, it's the government's burden to prove beyond a reasonable doubt that it's not self-defense. Here it would be the government's burden to prove beyond a preponderance of the doubt. But I guess it didn't seem that you were challenging the evidence that they had. You were just saying the judge didn't get the law right. That was one of the errors. I also challenged whether there was a violation at all. Of course. And in doing so, he applied the wrong law. So, of course, I argued that as I had. So you're saying we should interpret what you're raising as also that it didn't they didn't overcome the hearsay? Correct. Because in their whole argument is that he didn't finish the program. What happened here is he was threatened twice that day. He picked up the phone and called his probation officer. Oh, I know all of that. Right. So he took every effort to get himself out of that situation. So they did not show. They had no proof at all in terms of their case. And so we challenged that there ever was a violation. But, counsel, what about just the key statement, as Judge Singleton has said, is this statement from the probation officer that he could not be placed in any other program. That's really what triggered the finding that he had violated this condition. I didn't see any argument you made either in the district court or here that you were objecting to the district court's reliance on that hearsay. Oh, I did, because I said he was ready to go to any other program. They couldn't. What she told him that day was stay there, you'll be safe, we'll look into it, and we'll find a different program. Once the events happened, then they sought a warrant. At that point, they weren't looking for a program. And so he came to my office and we turned ourselves in. He would be available to go to a program right now. In fact, he's in one. But she says in a later time, when the matter was initially presented to a magistrate judge on a probable cause hearing, she says in her summary, admittedly unsworn, but in her summary, she says they threw him out. They won't take him back. They won't give him a reference. I can't get him into another program. There's nothing more I can do, she says. That was my memory of that in the transcript, Your Honors. We were arguing release pending the final revocation hearing at that point, at the initial hearing, which is in the excerpt of records. I asked that he be released to the woman that he had stayed the night before. And the answer was, on that day, the same day that he was kicked out, they couldn't find a place for him that day. But I don't think that it went beyond the release for bail at that point for the revocation hearing. There was no testimony of that at the hearing itself. There was a complete absence of any testimony at all on the government's behalf. So it was very hard for me to respond to something other than to set forth that Mr. Davis was asked by the police officer whether he wanted to file charges. And he declined. The other individual was not asked that question because it was clear to the police officer that he was the first aggressor because he lied to him and said that he was, he hit the bed, that was how it happened, that was how he broke his lie. Yeah, I wasn't referring to that. I was referring to the Petition for Warrant for Offender Under Supervision in which there's a summary in support of Petition for Warrant. Which would have been prepared that day and all efforts were stopped on the 23rd. It was filed on September 23rd. The incident happened on the 22nd. So in a 24-hour period or fewer than 24 hours, Ms. Hunt could not find another location within 24 hours. But had we, had the judge ruled that if he had correctly applied self-defense and ruled that there was no revocation, we could have found another program to put him in. That's not a problem. Well, all right. Here's the ultimate paragraph in the summary. And she says, To his credit, Davis reported immediately to his attorney. Davis later felt unsafe and noted the roommate to be the aggressor as he was acting on behalf of the individual from the group. However, the ultimate choices that Davis made during his residence at the program leave this office with little resources to refer Davis for needed inpatient treatment in order to avoid these types of situations in the future. As no adequate inpatient treatment placement is available, a warrant is respectively recommended. That day she sought a warrant because she couldn't put him in another program that day, because the incident happened on the 22nd. And at some point she says, oh, there are all kinds of programs available? No. I'm saying that it wasn't a question that there weren't other programs available. She didn't testify. The issue, though. There were other programs available. This is the why she sought the warrant, as she says. A warrant is respectfully requested. So then he goes in front of the court for the ultimate decision in this case. She was looking, because he wasn't the aggressor, because he acted in self-defense, she was looking for another placement that very day. Because he was the one who declined charges against the other guy. And so she was looking for a place to put him in that day rather than going through the warrant process. There were plenty. If they had showed up at the evidentiary hearing and said we've looked for the last ten days, we've run into efforts, and there is no place, we'd have a different case. They didn't do that because that's not the case. They didn't have that evidence, Your Honor. There were other programs if you had more lead time than 24 hours. All right. Unless there's additional questions by the Court, we've taken you well over. Thank you for your argument, both of you. This matter will stand submitted.
judges: Singleton, Callahan, Watford